IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIMINAL ACTION NO. 16-00272-KD-N |
| | ) |
| FELIX ALREDO RIVAS | ) |
|     Defendant | ) |

**ORDER**

On February 14, 2017, the Court held a hearing on Defendant's Amended Motion to Suppress. (Doc. 17).[1] The Defendant, Felix Rivas, and his attorney, Daniel McCleave, Esq., were both present. Assistant United States Attorney George May was present on behalf of the United States. The Court has considered the parties' additional briefing (Docs. 26-27) and the matter is now ripe for adjudication. For the reasons discussed herein, the motion to suppress is **DENIED**.

**I.  Background**

On October 3, 2016, Officer Austin Sullivan of the Saraland, Alabama Police Department ("Sullivan") was patrolling southbound Interstate 65, around mile marker 15. At the suppression hearing, Sullivan testified he observed Rivas' truck touch or slightly cross the "fog line" eight times. Though the view is partially obstructed, a dashboard camera video of the traffic stop does not contradict Sullivan's testimony.

After observing what Sullivan determined to be eight traffic infractions, Sullivan initiated a traffic stop. Sullivan approached the vehicle and requested the Rivas' license and registration and inquired as to whether Rivas was sleepy.  Sullivan also observed that there were only two keys on the key ring in the ignition and that Rivas had a small bag of luggage in the front seat of

---

[1] Defendant's previous motion to suppress (Doc. 16) is **MOOT** in light of Defendant's amended motion.

the truck. Sullivan also noticed that Rivas' hands were shaking. According to Sullivan, the shaking was severe enough that Rivas had trouble handing Sullivan his identification.

Shortly after his initial contact with Rivas, Sullivan determined that Rivas was not fluent in English. Sullivan asked Rivas to sit in the passenger seat of his patrol car so he and Rivas could utilize a translation program Sullivan had on his computer. Sullivan and Rivas then both sat in the patrol car and began to converse using the translation program. Sullivan also observed that Rivas seemed nervous, was avoiding eye contact, was breathing unusually, and that his carotid artery was visibly pulsating.

While continuing to try to communicate with Rivas via the translation program, Sullivan learned via the results of electronic records checks that Rivas had entered the United States from Mexico a few days prior to the traffic stop. Rivas also told Sullivan that he was on his way from Houston to Atlanta to stay with a person named Danielle Gonzalez. Sullivan inquired as to the nature of his trip, who Danielle Gonzalez was, and where he lived. Through the records checks, Sullivan also learned that Rivas had some connection to human trafficking.[2]

Before Sullivan issued Rivas a warning citation for the lane infractions, Saraland Police Lieutenant Gregory Cully arrived with drug detecting K-9, Chico. Lieutenant Cully and Chico completed a search around the truck. Chico alerted that drugs were present in the vehicle. Later, 136.4 grams of methamphetamine were found hidden in one of the trucks' two gas tanks. As a result, Rivas was indicted on the charges now pending in this Court.

**II.     Analysis**

There are two issues before the Court: 1) whether the initial traffic stop violated the Defendant's rights under the Fourth Amendment; and 2) whether the duration of the stop was

---

[2] At the hearing, the Court inquired into the nature of this information which was obtained from a program called "Blue Lightning." It's unclear whether Rivas had been convicted of such an offense or was simply suspected of being involved or connected to human trafficking.

unreasonable in light of *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). As the answer to both questions is no, Defendant's motion to suppress is **DENIED** on both grounds.

### A.   Legality of the Traffic Stop

As the Eleventh Circuit has explained:

> "The Fourth Amendment protects individuals from unreasonable search and seizure." *Chanthasouxat,* 342 F.3d at 1275. A traffic stop, however, is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. *Chanthasouxat,* 342 F.3d at 1275. When determining whether an officer had probable cause to believe that a traffic violation occurred, the "officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons,* 172 F.3d 775, 778 (11th Cir.1999) (quotation omitted). The Constitution also permits police officers to conduct a brief investigatory stop, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "if they have a reasonable, articulable suspicion based on objective facts that" an individual is engaged in criminal activity. *United States v. Powell,* 222 F.3d 913, 917 (11th Cir.2000). A determination of reasonable suspicion is based on the totality of the circumstances, and "[i]t does not require officers to catch the suspect in a crime. Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Acosta,* 363 F.3d 1141, 1145 (11th Cir. 2004) (citations omitted). Additionally, the issue is not whether the particular officer involved "actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify [the investigatory stop]." *United States v. Nunez,* 455 F.3d 1223, 1226 (11th Cir.2006).

*United States v. Harris*, 526 F.3d 1334, 1337–38 (11th Cir. 2008).

At the hearing, the Court expressed its concern regarding whether "touching" or "riding" a fog line was a violation of Ala. Code. § 32-5A-88. This code section states:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply….A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety….

Ala. Code § 32-5A-88(1). Specifically, the Court inquired as to whether a simple contact with the fog line, which drivers frequently make when travelling along lined roads, was the type of

3

conduct prohibited by the statute at issue. For example, in *Galindo v. State*, the Alabama Court of Criminal Appeals affirmed, by unpublished memorandum, a traffic stop in which the officer "saw Galindo weave to the right, cross the white line, and hit the "sleeper bumps" on the shoulder of the road, which are approximately 6-12 inches outside the white line designating the traffic lane. According to [the officer], crossing the white line constituted a violation of § 32-5A-88, Ala. Code 1975." *Galindo v. State*, 949 So. 2d 951 (Ala. Crim. App. 2005).[3] Justice James Gregory "Greg" Shaw dissented, writing:

> Many courts have held that a driver's slightly crossing over the fog line one time for a moment does not, standing alone, justify a traffic stop, and many of those cases involved lane-change statutes similar or identical to Alabama's statute. See, e.g., *State v. Abeln,* 136 S.W.3d 803 (Mo.Ct.App.2004); *Rowe v. State,* 363 Md. 424, 769 A.2d 879, 883-89 (2001); *Crooks v. State,* 710 So.2d 1041, 1042-43 (Fla.Dist.Ct.App.1998); *State v. Lafferty,* 291 Mont. 157, 967 P.2d 363, 365-66 (1998); *Brown v. State,* 188 Ga.App. 184, 372 S.E.2d 514, 515-16 (1988); *Hernandez v. State,* 983 S.W.2d 867 (Tex.Ct.App.1998); *State v. Tarvin,* 972 S.W.2d 910, 911-12 (Tex.Ct.App.1998); *Corbin v. State,* 33 S.W.3d 90 (Tex.Ct.App.2000), rev'd on other grounds, 85 S.W.3d 272 (Tex.Crim.App.2002); *State v. Livingston,* 206 Ariz. 145, 75 P.3d 1103, 1105-06 (Ct.App.2003); *State v. Cerny,* 28 S.W.3d 796, 799-801 (Tex.Ct.App.2000); *Jordan v. State,* 831 So.2d 1241 (Fla.Dist.Ct.App.2002); *People v. Leyendecker,* 337 Ill.App.3d 678, 272 Ill.Dec. 543, 787 N.E.2d 358 (2003); *State v. Caron,* 534 A.2d 978 (Me.1987); *United States v. Gregory,* 79 F.3d 973 (10th Cir.1996); *United States v. Ochoa,* 4 F.Supp.2d 1007 (D.Kan.1998); *State v. Tague,* 676 N.W.2d 197 (Iowa 2004); *United States v. Freeman,* 209 F.3d 464 (6th Cir.2000); *State v. Bello,* 871 P.2d 584 (Utah Ct.App.1994); *Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001); *United States v. Colin,* 314 F.3d 439 (9th Cir.2002); *United States v. Smith,* 799 F.2d 704 (11th Cir.1986); *United States v. Sugar,* 322 F.Supp.2d 85 (D.Mass.2004); *United States v. Gastellum,* 927 F.Supp. 1386 (D.Col.1996). Other courts have reached different conclusions. Compare *State v. Tijerina,* 61 Wash.App. 626, 811 P.2d 241 (1991); *State v. Shivers,* 827 So.2d 534 (La.Ct.App.2002); *State v. Waters,* 780 So.2d 1053 (La.2001); *Zimmerman v. North Dakota Dep't of Transp. Director,* 543 N.W.2d 479 (N.D.1996); *State v. Battleson,* 567 N.W.2d 69 (Minn.App.1997); *Tyler v. State,* 161 S.W.3d 745 (Tex.Ct.App.2005); *State v. Hodge,* 147 Ohio App.3d 550, 771 N.E.2d 331 (2002); *United States v. Martinez,* 354 F.3d 932 (8th Cir.2004). The majority does not address these cases.

---

[3] The majority opinion does not appear on Westlaw but the Court has obtained a copy.

*Galindo v. State*, 949 So. 2d 951, 954-55 (Ala. Crim. App. 2005). The Court notes that this case has no precedential value, but cites it to demonstrate the state court's discussion of Ala. Code § 32-5A-88, which is the statute the Defendant was pulled over for violating.

At the suppression hearing, Sullivan testified he saw eight violations of the above quoted statute. The Court has reviewed the dash camera video and the video, though it is partially obstructed, the video does not contradict the officer. Further, the Court found the officer's testimony at the hearing to be credible.

The Court notes that in similar circumstances courts have upheld the legality of stops based on violations of Ala. Code § 32-5A-88.  *United States v. Sierra*, 501 F. App'x 900, 903 (11th Cir. 2012)("Here, the officer certainly had probable cause to stop [the defendant]: he observed [the defendant]'s truck cross over the highway fog line several times, which is a traffic violation. *See, e.g.,* Ala. Code § 32–5A–88; Ala. Code § 32–6–49.3(21)(b); *United States v. Harris,* 928 F.2d 1113, 1116 (11th Cir. 1991)(finding probable cause where officer stopped motorist for twice weaving into emergency lane)."); *but cf. United States v. Hernandez*, 17 F. Supp. 3d 1255 (N.D. Ga. 2014)(finding a traffic stop based on two fog line touches, standing alone, was not legally justified and discussing a "hyper-technical interpretation" of a Georgia traffic statute identical to Ala. Code. § 32-5A-88).

While the Court questions whether touching or slightly crossing a fog line violates Ala. Code § 32-5A-88, the Court need not decide whether the type of conduct Sullivan observed amounts to a violation of Alabama traffic law. This is because even if the conduct Sullivan observed is not a violation of Alabama law, the Court finds that Sullivan's determination that the Defendant's conduct violated Alabama law was reasonable. In *Heien v. North Carolina*, the United States Supreme Court examined the question of "whether reasonable suspicion can rest

on a mistaken understanding of the scope of a legal prohibition" and determined that it could. 135 S. Ct. 530, 536 (2014). In *Heien*, "an officer stopped a vehicle because one of its two brake lights was out, but a court later determined that a single working brake light was all the law required." *Id*. at 534. The Court held, "Because the officer's mistake about the brake-light law was reasonable, the stop in this case was lawful under the Fourth Amendment." *Id*.

In light of *Heien*, assuming without finding that the officer who initiated the traffic stop was mistaken in his belief that touching or slightly crossing the fog line was a violation of Alabama law, such a mistake of law would be reasonable under the circumstances. *Heien* at 540 ("But just because mistakes of law cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop. And Heien is not appealing a brake-light ticket; he is appealing a cocaine-trafficking conviction as to which there is no asserted mistake of fact or law."); *See also e.g. United States v. Harris*, 653 F. App'x 709, 712 (11th Cir. 2016)(traffic stop for license plate frame obscuring detail on license plate did not violate Fourth Amendment even if frame did not actually violate Florida statute, where officer's believe in violation "was objectively reasonable in light of the statute's broad language and the lack of any settled state law at the time of [the officer's] stop that precluded her belief.").[4]

Accordingly, the Court finds that Rivas' Fourth Amendment rights were not violated when he was pulled over for violating Ala. Code § 32-5A-88. Thus, his motion to suppress on this ground is **DENIED**.

### B.  Duration of the Traffic Stop

The Court turns to Rivas' contention that his Fourth Amendment rights were violated because his detention was prolonged in violation of the United States Supreme Court's holding

---

[4] The Court notes that unpublished opinions are persuasive rather than binding authority.

in *Rodriguez v. United State,* 135 S. Ct. 1609 (2015). In *Rodriguez,* the Court held "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Id*. at 1612 (internal quotations and citations omitted). The Supreme Court explained that in addition to issuing a ticket or warning, a police officer's "mission includes ordinary inquiries incident to [the traffic] stop." *Id*. at 1615 (quotation marks omitted). Those inquiries "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. Because they "serve the same objective as enforcement of the traffic code"—namely, "ensuring that vehicles on the road are operated safely and responsibly"—those inquiries do not unconstitutionally extend the traffic stop. *See id*. at 1614-15.[5]  The Supreme Court also observed, "[l]acking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id*. at 1615.  Finding that police may not extend an otherwise completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff, the Supreme Court remanded the case to the Court of Appeals for its consideration "whether reasonable suspicion of criminal

---

[5] *See also United States v. Vargas*, 848 F.3d 971 (11th Cir. 2017)(summarizing *Rodriguez* as follows):

> In the *Rodriguez* case the officer who made the stop had completed the "ordinary inquiries," given the driver back his documents, and handed him a written warning. *Id*. at 1613. It was only then, after he had gotten those tasks "out of the way" (in his own words), that the officer asked the driver to consent to a drug dog sniff of the vehicle. *Id*. The driver refused to consent. *Id*. The officer then ordered him out of the vehicle and made him stand in front of the patrol car until another officer arrived and the dog sniff was conducted. *Id*. "All told, seven or eight minutes had elapsed from the time [the officer] issued the written warning until the dog indicated the presence of drugs." *Id*.

activity justified detaining Rodriguez beyond completion of the traffic infraction investigation[,]" which would permit a prolongation of the stop. *Id*. at 1616-17.

Thus, the initial inquiry in a *Rodriguez* based challenge focuses on whether the stop was "prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Id*. at 1612 (internal quotations and citations omitted).  Upon consideration of the applicable law and the evidence before it, the Court finds the stop was not prolonged and Defendant's Fourth Amendment rights were not violated.

Although the time it took Sullivan to conduct the initial stop may have been longer than a typical traffic stop, the length of the stop was reasonable given that Rivas and Sullivan could not understand one another. Because of the language barrier, the normal tasks that accompany a routine traffic stop took considerably more time for Sullivan to complete. The translation program Sullivan was using involved Sullivan typing information into the computer, the computer translating the information, Rivas reading it, and then Rivas responding by typing his answer in Spanish into the computer for the computer to translate back to Sullivan.  Officer Sullivan testified that this questioning of Rivas took place while he was awaiting responses from a database check of the license plate (called in at beginning of the stop) and drivers license (called in approximately 7 minutes into the stop).  Thus, at this point the traffic stop was not unreasonably prolonged, as Sullivan had not completed his duties regarding the traffic violation.

The dashboard camera recording of the traffic stop reveals that when Lieutenant Cully and Chico arrived, approximately 22 minutes into the stop, Sullivan and Rivas were still talking in Sullivan's patrol car.  At that point Rivas exited the patrol car and a dog sniff was performed of the area around Rivas' truck. Chico immediately alerted.  Simultaneously, Officer Sullivan had received information that Rivas had returned from Mexico three days prior and that Rivas

8

may have some connection to human trafficking. At this point, there is no question but that Sullivan had at least reasonable suspicion to prolong the stop.

Rivas returns to the patrol car and Sullivan informed Rivas of the dog's positive alert. Sullivan and Rivas continued to converse, with Sullivan asking him questions. About six minutes after the dog alerted, Sullivan informs the Defendant he intends to issue him a warning citation. The two exit the patrol car and Sullivan, oddly and in spite of probable cause to detain Rivas, informs the Defendant he may stay with the vehicle or leave on foot, but that the vehicle will be staying with law enforcement. Rivas remains at the scene.

### III. Conclusion

For the reasons discussed herein, Defendant's motion to suppress (Doc. 17) is **DENIED**.

**DONE** and **ORDERED** this **10th** day of **March 2017.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**